[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-13121
Non-Argument Calendar

_____

BIA Nos. A97-207-944 & A97-207-945

FRANCISCO JAVIER ALVAREZ,
EUFEMIA AGUILAR-HERNANDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 28, 2006)**

Before DUBINA, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Francisco Javier Alvarez ("Alvarez") and his wife, Eufemia Aguilar-

Hernandez, both natives and citizens of Guatemala, seek review of a final order by

the Board of Immigration Appeals ("BIA"). The order affirmed the Immigration

Judge's ("IJ") denial of Alvarez' petition for asylum and withholding of removal

under the Immigration and Nationality Act ("INA") and withholding of removal

under the Convention Against Torture ("CAT").  Alvarez argues that the BIA erred

in finding his asylum application untimely and claims that he has established

eligibility for asylum and withholding of removal under the INA.[1] We find that we

lack jurisdiction to review the timeliness issue.  Additionally, we find that

substantial evidence supports the BIA's determination that Alvarez is not likely to

be persecuted in Guatemala and therefore, he is not entitled to withholding of

removal.  Accordingly, we affirm.

*Background*

Alvarez sought asylum and withholding of removal, arguing that he had

been persecuted in the past because of his political affiliations and because he fears

further persecution if he is forced to return to Guatemala.  He alleges the following

facts in support of his claim.  In 1981 and 1982 he was an active member of the

Worker Labor Union and campaigned for workers' rights in that capacity.  In 1982,

General Rios-Montt, an opponent of the labor movement, came to power and

targeted Alvarez for his positions. He was captured and beaten three times. Alvarez

---

[1] Because Alvarez does not argue that the IJ erred in denying CAT relief, he is deemed to have abandoned this argument.  *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283 n.12 (11th Cir. 2001).

claims that as a result of injuries from the last assault, which took place in 1982, he was eventually unable to continue work and was declared handicapped. He continued to fear further harassment from the authorities, even after Rios-Montt lost power, and claims that he constantly changed residences from that time onwards in order to escape detection. In 1999, when Rios-Montt and his colleagues ran for political office again, Alvarez left for the United States. After being placed in removal proceedings in 2003, he applied for asylum and withholding of removal under the INA and CAT on behalf of his wife and himself. As part of his application, he claims that Rios-Montt's allies have continued to search for him and that he is unsafe in Guatemala because of Ruis-Montt's renewed participation in the political process.

The IJ found that Alvarez was statutorily ineligible for asylum, because he failed to file the application within a year of his arrival in the United States and did not meet any of the exceptions to this one-year requirement. The IJ further noted discrepancies in the applicant's written application and testimony, as well as inconsistencies with regard to dates and details of events. The IJ considered the fact that Ruis-Montt and his colleagues were defeated in a free and fair election in 2003 and that in light of Alvarez's failing health, he was unlikely to be considered a political threat. He concluded that since any alleged persecution took place twenty years ago, and because Alvarez had failed to demonstrate a continuing

3

threat, he was not eligible for withholding of removal.

Following an appeal, the BIA issued an opinion affirming the IJ's decision. It held that the asylum application was untimely and appeared to agree with the IJ that in light of the discrepancies, Alvarez's testimony was not completely credible. Finally, the BIA concluded that changes in country conditions and Alvarez's personal circumstances demonstrate that he is not likely to be persecuted and therefore, that withholding of removal is not warranted. Alvarez appeals this decision.

*Jurisdiction*

We review our subject-matter jurisdiction *de novo*. *Brooks v. Ashcroft*, 283 F.3d 1268, 1272 (11th Cir. 2002). Under the INA, an alien may apply for asylum only if "the application has been filed within 1 year after the date of the alien's arrival in the United States" or if the delay can be excused by extraordinary circumstances. INA § 208(a)(2), 8 U.S.C. § 1158(a)(2). The INA further divests us of jurisdiction to review timeliness decisions, mandating that "[n]o court shall have jurisdiction to review any determination" that an application was untimely or that extraordinary circumstances do not exist. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

These provisions notwithstanding, we retain jurisdiction to review legal or constitutional claims arising from decisions based on timeliness. REAL ID Act of

2005, Pub.L. No. 109-13, Div. B, 119 Stat. 231 (2005).[2] While Alvarez asserts that we have jurisdiction based on the REAL ID Act, he does not actually raise a legal or constitutional question meriting review. It is insufficient to argue that the BIA's assessment of timeliness was incorrect; Alvarez cannot escape the constraints of INA § 208(a)(2) by labeling his appeal with another name. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005)(per curiam). We therefore find that we do not have jurisdiction to review the BIA's decision as it pertains to his asylum claim. Accordingly, we dismiss the claim and turn to his petition for withholding of removal under the INA.

*Standard of Review*

When, as here, the BIA issues a decision without adopting the IJ's decision, we review only the BIA's opinion. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "To the extent that the BIA's decision was based on a legal determination, [our] review is *de novo*." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004). However, the BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1283-84 (internal quotation marks

---

[2] Section 106(a) of the REAL ID Act applies to all claims filed before, on, or after the REAL ID Act's enactment date of May 11, 2005. *See* REAL ID Act § 106(b); 8 U.S.C. § 1252.

omitted).  Similarly, we also review credibility determinations under the substantial evidence test.  *D-Muhumed*, 388 F.3d at 818.

*Discussion*

An alien is entitled to withholding of removal under the INA if he can demonstrate that it is more likely than not "that [his] 'life or freedom would be threatened in [that] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'"  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005)(per curiam)(quoting 8 U.S.C. § 1231(b)(3)(A) (alteration omitted)).  The more-likely-than-not standard is more stringent than the well-founded fear standard in asylum cases.  *Tan v. U.S. Att'y Gen.,* 446 F.3d 1369, 1375 (11th Cir. 2006).

An applicant can meet this standard by either establishing it is more-likely-than-not that he will be persecuted in the future or by establishing past persecution in his country based on a protected ground.  *Id.*  Once an alien establishes past persecution, "a rebuttable presumption arises that [he] has a well-founded fear of future persecution, and the burden then shifts to the [Department of Homeland Security] to show that the conditions in the country have changed or the alien could avoid a future threat through relocation."  *Id.* (quotations omitted).

Alvarez argues that the beatings are past persecution within this standard.  However, we find that substantial evidence supports the BIA's decision to the

6

contrary. Alvarez alleged that he was beaten severely by government forces. However, contrary to Alvarez's claims, documentary evidence showed that the alleged beating took place before Rios-Montt came to power and before he joined the union and became involved in political activities. Since they are not based on a protected ground, the beating cannot be used to establish past persecution. Additionally, even if they were to be considered sufficient for past persecution purposes, there is ample evidence to overcome the presumption of future persecution. In light of the time that has passed since the beatings, the change in government, and in Alvarez's own health and circumstances, the BIA did not commit reversible error in concluding that future persecution is unlikely.[3] Since we find that substantial evidence supports the BIA's decision, we affirm.

**DISMISSED IN PART, AFFIRMED IN PART.**

---

[3] Alvarez also challenges the BIA's determination that he was not fully credible because of inconsistencies in his testimony. Since there is substantial evidence to support the BIA's decision that the more-likely-than-not standard for persecution has not been met, regardless of Alvarez's credibility, we need not consider whether the BIA erred in its credibility analysis.